CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

AUG 2 5 2009

JOHN F CORCORAN, CLERK
BY: ~~~~
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 5:08CR00028 |
| | ) | Criminal Action No. 5:09CR00026 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANIEL W. PRESGRAVES, | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | United States District Judge |

This matter is presently before the court on a variety of pretrial motions. The court held a hearing on the motions on August 14, 2009. The motions have been fully briefed and are ripe for ruling.

## Background

The defendant, Daniel W. Presgraves, was charged in a twenty-two-count indictment in Criminal Action No. 5:08CR00028 on October 22, 2008. On June 23, 2009, the defendant was charged in an additional one-count indictment in Criminal Action No. 5:09CR00026. At the time of the first indictment, and at all times relevant to both indictments, the defendant was the Sheriff of Page County, Virginia. He resigned from office in February of 2009.

The first indictment charges the defendant with racketeering; sexual assault; attempting to persuade individuals to withhold information from federal law enforcement officials; attempting to influence the giving of testimony before a federal grand jury; honest services mail fraud; making false representations to federal law enforcement agents; conspiring to sponsor an animal in an animal-fighting venture and an illegal gambling operation; money laundering; and conspiring to structure financial transactions so as to evade reporting requirements. The second indictment charges the defendant with making false representations to a Special Agent of the Federal Bureau of Investigation (FBI). The defendant's jury trial on the first indictment is scheduled to begin on September 16, 2009.

**Discussion**

The following pretrial motions are presently before the court: (1) the defendant's motion to dismiss Count One of the first indictment; (2) the defendant's motion to dismiss Counts Fourteen and Twenty-Two of the first indictment; (3) the defendant's motion to strike surplusage from the first indictment; (4) the defendant's motion to sever Count Fifteen of the first indictment; (5) the government's motion to consolidate the indictments for trial; and (6) the government's pretrial motions regarding the marking of trial exhibits, the presence of agents during trial, and the admission of evidence under Rule 404(b) of the Federal Rules of Evidence. The court will address each of these motions in turn.

## I.     Defendant's Motion to Dismiss Count One

Count One of the first indictment charges the defendant with racketeering in violation of 18 U.S.C. § 1962(c). The defendant has moved to dismiss this count on the basis that the allegations in the indictment are insufficient to support a racketeering charge. To warrant dismissal on this basis, the defendant must "demonstrate that the allegations therein, even if true, [do] not state an offense." United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004).

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, imposes criminal liability upon those who engage in certain "prohibited activities," which are set forth in 18 U.S.C. § 1962. In this case, the defendant is charged with violating § 1962(c), which provides, in pertinent part, that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

2

An "enterprise," for purposes of the statute, includes "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The term "racketeering activity" includes "'any act or threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'" H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989) (quoting 18 U.S.C. § 1961(1)).

Count One alleges that the Page County Sheriff's Office constitutes an "enterprise" under RICO; that the defendant was, at all relevant times, employed by and associated with the enterprise; and that he knowingly and unlawfully "conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity." (1st Indictment at pg. 10). The indictment further alleges that the pattern of racketeering activity consisted of the following predicate acts: violations of 18 U.S.C. § 1512, related to tampering with a witness, victim, or informant (Racketeering Acts One through Seven, Eleven, and Twelve); violations of 18 U.S.C. § 1341, related to honest services mail fraud (Racketeering Acts Eight and Fourteen); bribery in violation of state law (Racketeering Acts Nine and Ten); and aiding and abetting in the possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Racketeering Act Thirteen).

In moving to dismiss Count One, the defendant does not dispute that the Sheriff's Office is an "enterprise" under RICO, or that he operated or managed the enterprise at all times relevant to the indictment. Instead, the defendant argues that the predicate acts of racketeering charged in the indictment are unrelated to the affairs of the Sheriff's Office, and that they do not constitute

3

"a pattern of racketeering activity." See 18 U.S.C. § 1962(c). For the following reasons, however, the court concludes that both of these arguments are without merit.

The defendant's first argument – that none of the predicate offenses to the RICO charge involve conduct related to the affairs of the Sheriff's Office – is foreclosed by the United States Court of Appeals for the Fourth Circuit's decision in United States v. Grubb, 11 F.3d 426 (4th Cir. 1993). In that case, the defendant, a state court judge, was convicted of operating his judicial office as a racketeering enterprise in violation of 18 U.S.C. § 1962(c). Grubb, 11 F.3d at 430. On appeal, the defendant sought to overturn his conviction on the basis that none of the predicate offenses to the RICO charge involved conduct related to the affairs of his judicial office. Id. at 438. In rejecting the defendant's argument, the Fourth Circuit emphasized that a defendant's racketeering activity does not have to benefit the RICO enterprise. Id. at 439 (citing United States v. Webster, 669 F.2d 185, 186 (4th Cir. 1981)). The Court explained that "such a requirement would be problematic 'in cases where the enterprise is governmental in nature, and almost universally not organized for profit.'" Id. (quoting Webster, 669 F.2d at 186). The Court ultimately held that a sufficient nexus between the enterprise and the defendant's racketeering activity had been established, since the defendant physically used his judicial office ("i.e. the telephones and the physical office itself") in engaging in the predicate acts, as well as the prestige and power of the office. Id.

Here, the first indictment specifically alleges that the defendant used his official position as Page County Sheriff to commit the racketeering acts charged in the indictment, and that certain acts were committed in the defendant's physical office. In light of the Fourth Circuit's decision in Grubb, the court concludes that the allegations in the first indictment are clearly sufficient to establish the requisite nexus between the Page County Sheriff's Office and the

4

alleged racketeering activity. See also United States v. Ruiz, 905 F.2d 499, 504 (1st Cir. 1990) (holding that "there was ample room for the jury to find a snug fit between the defendant's acts and the enterprise [a city police department]," since the "defendant's illegal activities were clearly helped along by the authority vested in him as a police officer and by the reactions . . . which a police officer, uniquely, has the ability to engender in others by virtue of his position").

The court is also unpersuaded by the defendant's argument that the predicate acts set forth in the first indictment do not constitute a "pattern of racketeering activity," as required by 18 U.S.C. § 1962(c). Pursuant to 18 U.S.C. § 1961, a "pattern of racketeering activity" requires "at least two acts of racketeering activity" occurring within a ten-year period. 18 U.S.C. § 1961(5). To establish a pattern of racketeering activity, the government must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 240. "'It is this factor of continuity plus relationship which combines to produce a pattern.'" Id. at 239 (internal citation omitted).

In H.J. Inc., the United States Supreme Court noted that RICO's legislative history revealed that "Congress . . . had a fairly flexible concept of a pattern in mind." Id. at 239. The Court ultimately held that predicate acts of racketeering are related, if they have "'the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Id. at 240 (quoting 18 U.S.C. § 3575(e)) (emphasis added); see also United States v. Blandford, 33 F.3d 685, 703-704 (6th Cir. 1994) (noting that the Supreme Court's use of the disjunctive in defining the relationship requirement in H.J. Inc. "suggests that the Court meant to craft a broad test of relatedness").

5

Applying the test set forth in H.J. Inc., the court concludes that the first indictment clearly contains sufficient facts to satisfy the relationship requirement. The indictment alleges that the defendant committed all of the predicate acts of criminal activity charged in the indictment, and that he misused his position as Sheriff to engage in each of the predicate acts. Thus, the predicate acts shared a common "participant" (the defendant) and a common "method[] of commission" (abuse of the defendant's power as Sheriff). H.J. Inc., 492 U.S. at 240; see also United States v. Hively, 437 F.3d 752, 762 (8th Cir. 2006) (holding that the evidence was sufficient to establish a pattern of racketeering where, inter alia, the predicate acts of mail fraud shared a common participant (the defendant, an elected state prosecutor) and a common method of commission (abuse of the defendant's power as prosecuting attorney)); United States v. Lovin, 2007 U.S. Dist. LEXIS 4914, at *7-8 (W.D. N.C. Jan. 17, 2007) (rejecting the defendant's argument that the predicate acts of racketeering were unrelated, and emphasizing that "the named Defendants were all deputies of the Robeson County Sheriff's Office" and that the "connection between the criminal conduct of the Defendants [was] their abuse of power to further criminal activity").

The court also concludes that the allegations in the first indictment are sufficient to satisfy the continuity requirement. As previously noted, to establish a pattern of racketeering activity, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." H.J. Inc., 492 U.S. at 240 (emphasis in original). The continuity requirement is "both a closed- and open-ended concept"; it may be satisfied by "a closed period of repeated conduct," or "past conduct that by its nature projects into the future with a threat of repetition." Id. Whereas predicate acts that extend over a few weeks or months and threaten no future criminal conduct do not satisfy this requirement, "[a] party alleging a

6

RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id.

In this case, the indictment identifies fourteen predicate acts that occurred between 2000 and October of 2008, several of which allegedly spanned a multi-year period. Consequently, closed-end continuity is sufficiently charged in the indictment. See Lovin, supra, 2007 U.S. Dist. LEXIS 4914, at *8 (holding that the indictment was sufficient to satisfy the continuity requirement, since it alleged that the defendant's conduct occurred over a period of eight years); see also Walk v. Baltimore & Ohio R.R., 890 F.2d 688, 690 (4th Cir. 1989) (holding that defendant's predicate acts of racketeering that occurred over a ten-year period met the requirements of continuity, notwithstanding the "closed-ended" nature of the acts). Additionally, the nature of the alleged predicate acts suggests that open-ended continuity is also sufficiently charged, since a jury could infer that similar acts would have continued but for the intervention of law enforcement. See, e.g., Hively, supra (noting that a reasonable jury could have found that a threat of long-term racketeering activity remained, since the defendant was still serving as a state prosecutor at the time that a search warrant was executed on his office).

For the foregoing reasons, the defendant's motion to dismiss Count One of the first indictment will be denied.

## II.   Defendant's Motion to Dismiss Counts Fourteen and Twenty-Two

The defendant has also moved to dismiss Counts Fourteen and Twenty-Two of the first indictment, which charge him with engaging in honest services mail fraud, in violation 18 U.S.C. §§ 1341 and 1346. The defendant argues that § 1346 is unconstitutional on its face, and that, in the alternative, the statute is impermissibly vague as applied in this case.

7

## A.    **Background**

The mail fraud statute, 18 U.S.C. § 1341, makes it unlawful to use the United States mail to engage in a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341. From the time that the mail fraud statute and its companion statute prohibiting wire fraud were enacted, the statutes were "widely interpreted to apply to both (i) schemes to defraud persons of tangible property and (ii) schemes to defraud persons of intangible rights, such as the right to a defendant's honest services." United States v. Jefferson, 562 F. Supp. 2d 719, 721 (E.D. Va. 2008). In McNally v. United States, 483 U.S. 350 (1987), however, the Supreme Court limited the fraud statutes to schemes to defraud persons of tangible property rights, emphasizing that "[i]f Congress desires to go further, it must speak more clearly than it has." McNally, 483 U.S. at 360.

In response to McNally, Congress enacted 18 U.S.C. § 1346, which provides that the term "scheme or artifice to defraud," as used in the mail and wire fraud statutes, "includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Although the statute itself does not define "the intangible right of honest services," the Fourth Circuit has held that the passage of § 1346 so soon after McNally "strongly suggests . . . that Congress was content with pre-McNally interpretations" of the mail and wire fraud statutes. United States v. Bryan, 58 F.3d 933, 940 n.1 (4th Cir. 1995) (abrogated in part on other grounds, United States v. O'Hagan, 521 U.S. 642 (1997)).

In this case, as previously stated, the defendant's charges of honest services fraud are contained in Counts Fourteen and Twenty-Two of the indictment. Count Fourteen charges that from in or about 2000 until in or about 2007, the defendant devised a scheme and artifice to

8

defraud and deprive the Page County Sheriff's Office and the citizens of Page County of their right to the honest services of the Sheriff, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment and conflict of interest, by unlawfully using inmates in the custody of the Page County Jail to work on property owned by him or on projects in which he had a financial interest. The indictment alleges that the defendant used his authority and influence as Sheriff to maintain custody of certain inmates who worked for him on his personal land and/or financial projects, and that he convinced the Virginia Department of Corrections ("VDOC") that certain inmates should remain in the Page County Jail, who would ordinarily be incarcerated at a state facility. The indictment further alleges that on or about July 9, 2004, for the purposes of executing his scheme to defraud, the defendant knowingly caused a letter to be sent by United States mail from the VDOC, which approved the defendant's request that a particular inmate serve his or her sentence at the Page County Jail and participate in the Jail Trustee Program. The indictment notes that it is a violation of Virginia law for a Sheriff to use inmate labor for his personal benefit. See Va. Code § 53.1-130.[1]

Count Twenty-Two charges that, at all times relevant to the indictment, the defendant was required to comply with Virginia Code § 15.2-1615, which provides that, except in limited circumstances that are not relevant to the instant case, "[a]ll money received by the Sheriff shall be deposited intact and promptly with the county or city treasurer or Director of Finance." Va.

---

[1] Virginia Code § 53.1-130 provides as follows:

> No sheriff, jail superintendent, deputy or other jail officer shall have any prisoner work on property owned by him or by his relative, or on projects in which he is interested, nor shall any such prisoner be used for the personal gain or convenience of any sheriff or of any other individual. Any person found guilty of a violation of this section shall be guilty of a Class 1 misdemeanor.

Case 5:08-cr-00028-GEC   Document 125   Filed 08/25/09   Page 9 of 22   Pageid#: 490

Code § 15.2-1615.[2] The indictment further alleges that from in or about 2000 until in or about 2008, the defendant devised a scheme to deprive the Sheriff's Office and the citizens of Page County of their right to the honest services of the Sheriff, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment and conflict of interest, by failing to deposit approximately $39,409.73 that the Sheriff's Office received from the United States Customs Service and approximately $47,000.00 that the Sheriff's Office received from the company PayTel, in violation of Virginia Code § 15.2-1615. The indictment alleges that the defendant used his authority and influence as Sheriff to maintain bank and escrow accounts to conceal and withhold the money from the County Treasurer. The indictment further alleges that on or about February 18, 2004, for the purpose of executing the scheme to defraud, the defendant sent a letter by United States mail to Mr. "JT," a PayTel Sales Manager, which confirmed the defendant's earlier verbal request for PayTel to withhold $1,000 from each monthly commission check sent to the Sheriff's Office from PayTel. According to the indictment, this money was placed in an escrow account and was to be used at the direction of the defendant.

---

[2] Virginia Code § 15.2-1615 provides as follows:

All money received by the sheriff shall be deposited intact and promptly with the county or city treasurer or Director of Finance, except that the sheriff shall maintain an official account for (i) funds collected for or on account of the Commonwealth or any locality or person pursuant to an order of the court and fees as provided by law and (ii) funds held in trust for prisoners held in local correctional facilities, in accordance with procedures established by the Board of Corrections pursuant to § 53.1-68.

10

### B.   Defendant's Facial Challenge to § 1346

The defendant first argues that § 1346 is unconstitutionally vague on its face, since it does not define the term "honest services." "The Supreme Court has repeatedly held, however, that 'vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.'" United States v. Bryan, 58 F.3d 933, 942 (4th Cir. 1995) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)); see also United States v. Sun, 278 F.3d 302, 309 (4th Cir. 2002) (reviewing the constitutionality of a criminal statute only as the statute was applied to the defendants, since the statute does not involve First Amendment freedoms) (citing Mazurie, supra). Because § 1346 does not implicate First Amendment concerns, the defendant's facial challenge is precluded, and the court's review is limited to whether the defendant had fair notice that the statute proscribed the defendant's alleged conduct. See Bryan, supra (explaining that because the defendant's vagueness challenge to § 1346 did not implicate First Amendment concerns, "he therefore must contend with the general rule that one to whose conduct a statute clearly applies may not successfully challenge it for vagueness"); see also United States v. Long, 95 F. App'x 483, 486 (4th Cir. 2004) (same).[3]

---

[3] The defendant cites the plurality decision in City of Chicago v. Morales, 527 U.S. 41 (1999) for the proposition that facial vagueness challenges should not be limited to statutes that implicate First Amendment concerns. However, the defendant does not cite and the court is unaware of any Fourth Circuit decisions that apply Morales in the manner that the defendant advocates. Indeed, as the United States District Court for the Eastern District of Virginia recently pointed out in United States v. Jefferson, 562 F. Supp. 2d 719 (E.D. Va. 2008), "the Fourth Circuit's decision in Sun, which post-dates Morales, reaffirms the Mazurie rule and demonstrates that the Court of Appeals has not read Morales in the manner defendant suggests." Jefferson, 562 F. Supp. 2d at 724 n.7. Additionally, the court notes that as recently as August 12, 2009, the Fourth Circuit, in an unpublished opinion, rejected a defendant's facial vagueness challenge to a federal regulation that does not implicate the First Amendment. See United States v. Reyes, 2009 U.S. App. LEXIS 17944, at *2 (4th Cir. Aug. 12, 2009). The Court emphasized that "[b]ecause no First Amendment freedom is affected, [the Court's] review is limited to whether Reyes had fair notice that the statute prohibited his conduct." Id.

11

## C.    Defendant's As-Applied Challenge to § 1346

In addition to arguing that § 1346 is facially unconstitutional, the defendant asserts that it is unconstitutional as applied to him, since he could not have been aware that his alleged actions, set forth in Counts Fourteen and Twenty-Two of the first indictment, might violate the statute. For the following reasons, however, the court concludes that the defendant had fair notice that the statute prohibited his alleged conduct, and thus, that the statute was not unconstitutionally vague as applied to the defendant.

As the Fourth Circuit made clear in Bryan, supra, "[t]he legal meaning of 'a deprivation of the intangible right to honest services' has been extensively developed by the courts," particularly in the realm of cases involving public officials:

> In United States v. Barber, 668 F.2d 778, 784 n.4 (4th Cir.), cert. denied, 459 U.S. 829 (1982), for example, [the Fourth Circuit] held that state officials owe a "fiduciary duty . . . to the state and its citizens," and that one who schemes to deprive citizens of "the honest and faithful performance of an official's duties" violates section 1341. Accordingly, [the Court] affirmed the mail fraud conviction of the Commissioner of the West Virginia Beverage Control Commission, who had manipulated warehouse records and otherwise abused his position in order to obtain free liquor for himself and other officials. Id. at 781. Similarly, in [United States v. Mandel, 591 F.2d 1347 (4th Cir. 1995)], [the Court] found the mail fraud statute violated by the Governor of Maryland and several of his associates, who had manipulated the state's horse racing industry. The Governor's associates were guilty of failing to disclose their ownership of various racetracks during their dealings with the Maryland Racing Commission; the Governor, meanwhile, had failed to disclose his involvement with the race track owners to state legislators who were considering a bill benefitting the track owners. Mandel, 591 F.2d at 1355.
>
> Other circuits likewise have held that schemes involving various types of dishonesty by public officials come within the ambit of the mail fraud statute because such schemes defraud citizens of their intangible rights to honest and impartial government. See, e.g., United States v. Silvano, 812 F.2d 754, 755-57 (1st Cir. 1987) (affirming mail fraud conviction of city budget director who schemed to have city insurance contract awarded to company in which friend held significant interest); United States v. Brown, 540 F.2d 364, 368-70 (8th Cir. 1976)

12

(affirming mail fraud convictions of city building commissioner who, in exchange for rent payments, manipulated bid process for demolition projects to benefit associate); United States v. Bush, 522 F.2d 641, 643-46 (7th Cir. 1975) (affirming mail fraud conviction of city Director of Public Relations, based on his failure to disclose to other city officials his ownership of a company bidding for city projects and on his subsequent concealment efforts), cert. denied, 424 U.S. 977 (1976).

Bryan, 58 F.3d at 941; see also United States v. Panarella, 277 F.3d 678, 691 (3d Cir. 2002) (holding that "where a public official takes discretionary action that the official knows will directly benefit a financial interest that the official has concealed in violation of a state criminal law, that official has deprived the public of his honest services under § 1346"); United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997) (holding that an official "has defrauded the public of his services," if he "secretly makes [an official] decision based on his own personal interests" rather than the best interests of his constituents).

In light of the foregoing case law, there can be little doubt that the offense of honest services fraud encompasses the conduct alleged in Count Fourteen of the indictment. The indictment alleges that the defendant, as Sheriff of Page County, owed a fiduciary duty to the Sheriff's Office and the citizens of Page County, and that the defendant knowingly violated that duty and state law by using County inmates to work on property on which he had a personal interest, and by arranging for particular inmates to remain in the custody of the County Jail solely for that purpose. The indictment further alleges that the defendant caused a letter to be mailed in furtherance of the defendant's scheme. Such allegations clearly describe the sort of conduct that constitutes honest services fraud on the part of a public official, and the defendant, assuming the truth of the allegations, "should have known that his conduct might be unlawful." Bryan, 58 F.3d at 942.

13

The court is also convinced that the conduct alleged in Count Twenty-Two of the first indictment falls within the scope of honest services fraud. As previously stated, Count Twenty-Two alleges that the defendant owed a fiduciary duty to the Sheriff's Office and the citizens of Page County, and that the defendant violated that duty and state law, by concealing and withholding from the County Treasurer over $86,000.00 that the Sheriff's Office had received from the United States Customs Service and PayTel. The indictment further alleges that the defendant maintained bank and escrow accounts for the money that he unlawfully withheld from the County Treasurer, that the money was to be used at the defendant's direction, and that the defendant mailed a letter to PayTel in furtherance of the defendant's scheme to defraud. As with Count Fourteen, the court concludes that such allegations clearly describe the type of conduct by a public official that constitutes honest services fraud, and thus, that the defendant's motion to dismiss this count must be denied.

In reaching this decision, the court is unpersuaded by the defendant's argument that Count Twenty-Two is invalid because it does not specifically indicate whether the defendant personally benefitted from the money that he withheld from the County Treasurer "to be used at [his] direction." (1st Indictment at pg. 41). The Fourth Circuit, in a recent unpublished decision, specifically rejected the argument that "the government must demonstrate that a defendant received personal gain to sustain a conviction for honest services fraud under 18 U.S.C. §§ 1341 and 1346." United States v. Geddings, 278 F. App'x 281, 286 n.6 (4th Cir. 2008). As the Court emphasized in Geddings, neither the statute nor the Court's case law requires proof that a defendant received personal gain in order to sustain an honest services fraud conviction. Id.; see also United States v. Welch, 327 F.3d 1081, 106 (10th Cir. 2003) (rejecting the defendant's

14

argument that mail and wire fraud counts must allege an intent to achieve personal gain, and emphasizing that "the intent to defraud does not depend upon the intent to gain, but rather, on the intent to deprive").

The court is also unpersuaded by the defendant's argument that Count Twenty-Two fails to state an offense, since the state statute that the defendant allegedly violated, Virginia Code § 15.1-1615, does not subject the defendant to any criminal penalties. As the Fourth Circuit held in Bryan, supra, "the government [is not] required to prove that [a defendant] violated a criminal statute independent of the mail fraud statute in order to establish a violation of 18 U.S.C. §§ 1341, 1346." Bryan, 58 F.3d at 941 (emphasis added).[4]

As a final argument with respect to Count Twenty-Two, the defendant contends that the count "fails on its face" since the indictment only alleges that the defendant used the United States mail to facilitate his efforts to conceal and withhold the money that the Sheriff's Office received from Paytel, and does not allege that the defendant used the mail, or caused the mail to be used, to facilitate his efforts to conceal and withhold the money from the United States Customs Service. This argument is also without merit.

The essential elements of mail fraud are "(1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." United States v. Vinyard,

---

[4] The court notes that the Ninth Circuit has held that the government does not need to prove an independent violation of any state law to sustain an honest services fraud conviction. See United States v. Weyhrauch, 548 F.3d 1237, 1248 (9th Cir. 2008). The Supreme Court recently granted certiorari in Weyhrauch on this issue, specifically, "[w]hether to convict a state official for depriving the public of its right to the defendant's honest services through the non-disclosure of material information, in violation of [§§ 1341 and 1346], the government must prove that the defendant violated a disclosure duty imposed by state law." Weyhrauch v. United States, 129 S. Ct. 2863 (2009). Of course, the resolution of this issue has no bearing on the instant case, since the defendant is alleged to have violated duties and/or requirements specifically prescribed by the Code of Virginia.

266 F.3d 320, 326 (4th Cir. 2001). The allegations contained in Count Twenty-Two are clearly sufficient to satisfy these elements. Count Twenty-Two alleges a single scheme to defraud the Sheriff's Office and the citizens of Page County of its right to honest services, and it identifies a use of the mail in furtherance of that scheme. The fact that only one mailing is identified in the indictment does not render Count Twenty-Two invalid. As the Supreme Court recently noted in Bridge v. Phoenix Bond & Indem. Co., 553 U.S. ___, 128 S. Ct. 2131 (2008), "[t]he gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element.'" Bridge, 128 S. Ct. at 2138 (quoting Schmuck v. United States, 489 U.S. 705, 712 (1989)); see also United States v. Bradshaw, 282 F. App'x 264, 269-270 (4th Cir. 2008) (holding that "[t]he first element of mail fraud – knowing participation in a scheme to defraud – can extend beyond the specific mailing," and that "[t]he loss calculation for a mail fraud conviction may include any loss from the fraudulent scheme that the mailing furthered").

For the foregoing reasons, the defendant's motions to dismiss Counts Fourteen and Twenty-Two of the first indictment will also be denied.


### III.  **Defendant's Motion to Strike Surplusage**

The defendant has moved to strike various portions of the introductory section of the first indictment. Specifically, the defendant argues that the following portions should be dismissed as surplusage: (1) allegations that the defendant sexually harassed Victims A through D and F through L; (2) statements in the introduction pertaining to the number of Sheriff's Office employees and the at-will nature of their employment; (3) references to the fact that the

16

defendant is a Page County native and a former employee of the Virginia Department of Alcoholic Beverage Control; (4) references to the oath of office that the defendant was statutorily required to take when he was sworn in as Sheriff; and (5) allegations pertaining to inmates being transported to work sites by the defendant, his wife, and Sheriff's Office employees.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Pursuant to Rule 7(d), it is within the court's discretion to strike "surplusage" from an indictment. Fed. R. Crim. P. 7(d). The Fourth Circuit has held that a motion to strike surplusage should be granted if it is clear that the challenged allegations are (1) not relevant to the charge or charges; (2) inflammatory; and (3) prejudicial to the defendant. United States v. Williams, 445 F.3d 724, 733 (4th Cir. 2006) (internal citation and quotation marks omitted).

While the government argues that allegations in an indictment are "relevant," for purposes of a motion to strike surplusage, if they satisfy the test for "relevant evidence" under Rule 404(b) of the Federal Rules of Evidence, the court disagrees.[5] As explained in United States v. Cooper, 384 F. Supp. 2d 958 (W.D. Va. 2005) (Moon, J.):

> [Rule 7(c) of the Federal Rules of Criminal Procedure] contemplates an indictment that merely pleads each of the factual elements of the offense charged. It does not contemplate the inclusion of every piece of evidence that ultimately may be relevant to building a case against the defendant. If it did, a criminal indictment would be free to grow from a "plain and concise" statement of "essential" facts to an unreadable monstrosity discussing every piece of evidence that would be conceivably relevant at trial. Indeed, the Government would be free to use an indictment to thoroughly present its case to the jury before the trial even

---

[5] Rule 404(b) defines the term "relevant evidence" to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 404(b).

began, at a time when the defendant would not be entitled to defend himself. Although the cases defining surplusage sometimes inquire as to whether the material is "relevant to the charges," . . . this language should not be read as permitting any material that would be legally relevant at trial. Because so much material can qualify as legally relevant, such a reading would contravene the explicit language of Rule 7(c). Rather, as described by the Fourth Circuit in United States v. Hartsell, 127 F.3d 343, 353 (4th Cir. 1997)], the question is whether that material is "unnecessary in making out a prima facie pleading of the violation."

Cooper, 384 F. Supp. 2d at 960.

Applying the foregoing principles, the court concludes that the allegations in paragraphs 5(f) through (l) of the introduction, which describe the manner in which the defendant allegedly sexually harassed Victims F through L, must be stricken from the indictment. The allegations do not form the basis of, and are not necessary to prove, any of the twenty-two counts charged in the first indictment. Moreover, such allegations are likely to inflame the jury and unduly prejudice the defendant. For the same reasons, the court finds that the following portions of the indictment must also be stricken: allegations pertaining to the number of Sheriff's Office employees and the nature of their employment; the defendant's family history and previous job experience; and the oath of office required by Sheriffs. On the other hand, the defendant's motion will be denied with respect to the allegations pertaining to inmates being transported to work sites by the defendant, his wife, and Sheriff's Office employees. Such evidence is clearly relevant to Count Fourteen of the first indictment, which charges the defendant with honest services fraud in connection with his alleged use of inmate labor for his own benefit. Accordingly, the defendant's motion to dismiss surplusage will be granted in part and denied in part.

18

## IV.    Defendant's Motion to Sever Count Fifteen

The defendant has moved to sever Count Fifteen of the first indictment, which charges

that the defendant knowingly and willfully made a false material representation to a Special

Agent of the Internal Revenue Service (IRS) on May 5, 2007, in violation of 18 U.S.C. §

1001(a)(2). To support the motion, the defendant argues that Tom Bondurant, the lead Assistant

United States Attorney prosecuting the case, was one of only two or three witnesses, aside from

the defendant, who was present when the false representation was allegedly made; and that Mr.

Bondurant will likely need to be called as a fact witness at trial. In response, the government

argues that requests for testimony from a prosecuting attorney assigned to a case are generally

disfavored, and that the party seeking such testimony must demonstrate a compelling need for the

testimony.

Under Rule 14 of the Federal Rules of Criminal Procedure, "the court may order separate

trials of counts" if "the joinder of offenses . . . in an indictment . . . appears to prejudice a

defendant . . . ." Fed. R. 14(a). "The party seeking severance bears the burden of demonstrating

a strong showing of prejudice." United States v. Branch, 537 F.3d 328, 341 (4th Cir. 2008). In

deciding whether to grant a motion to sever, "[t]he trial court has a wide range of discretion," and

the trial's court's decision must be left undisturbed, "absent a showing of clear prejudice [on the

non-moving party] or abuse of discretion." United States v. Acker, 52 F.3d 509, 514 (4th Cir.

1995).

Having reviewed the parties' arguments in this case, the court concludes that the

defendant's motion to sever must be granted. While the court recognizes that requests for

testimony from a prosecutor trying a criminal case are generally disfavored, United States v.

Ziesman, 409 F.3d 941, 950 (8th Cir. 2005), "the defendant's obligation to resort to alternative

means of adducing factual testimony is not absolute," United States v. Prantil, 756 F.2d 759, 763

(9th Cir. 1985). See Id. at 764 (holding that the district court abused its discretion in denying the

defendant's timely motion for the substitution of the participating prosecutor in order to permit

the defense to call the prosecutor as a witness). At this stage of the proceedings, the court is

unable to conclude that the defendant should be precluded from eliciting testimony from Mr.

Bondurant with respect to the circumstances that give rise to Count Fifteen. Depending on the

evidence adduced at trial, Mr. Bondurant may be a material witness and the defendant may have

a compelling need for him to testify. Because "[t]he advocate-witness rule prohibits an attorney

from appearing as both a witness and an advocate in the same litigation," Id., the court, out of an

abundance of caution, will grant the defendant's motion to sever Count Fifteen.[6]

---

[6] As the United States Court of Appeals for the Ninth Circuit explained in Prantil, supra, the advocate-witness rule serves several specific policies in the context of a criminal prosecution:

> First, barring testimony by the participating prosecutor eliminates the risk that a testifying prosecutor will not be [a] fully objective witness given his position as an advocate for the government. Second, the rule prevents the prestige and prominence of the prosecutor's office from being attributed to testimony by a testifying prosecutor. Third, the rule obviates the possibility of jury confusion from the dual role of the prosecutor wherein the trier-of-fact is asked to segregate the exhortations of the advocate from the testimonial accounts of the witness. Naturally, the potential for jury confusion is perhaps at its height during final argument when the prosecutor must marshal[] all the evidence, including his own testimony, cast it in a favorable light, and then urge the jury to accept the government's claims. Hence there is a very real risk that the jury, faced with the exhortations of a witness, may accord testimonial credit to the prosecutor's closing argument. Finally, the rule expresses an institutional concern, especially pronounced when the government is a litigant, that public confidence in our criminal justice system not be eroded by even the appearance of impropriety.

Id. at 765 (internal citations and quotation marks omitted).

20

## V.     Government's Motion to Consolidate the Indictments

The government has moved to consolidate the first indictment with the indictment in Criminal Action No. 5:09CR00026, so that all of the charges can be tried in September of 2009. As previously stated, the second indictment charges the defendant with making a false representation to an agent with the FBI on May 5, 2007. The representation at issue in the second indictment is the same representation at issue in Count Fifteen of the first indictment. Having concluded that Count Fifteen should be severed from the remaining counts that are scheduled to be tried in September of 2009, it follows that the government's motion to consolidate the first and second indictments must be denied.

## VI.     Government's Miscellaneous Pretrial Motions

In the final pretrial motions, the government requests permission to pre-mark its exhibits for use at trial, and to have Special Agents Phil Barnett and Harvey Barlow remain at counsel table during trial. The government also seeks to admit certain evidence at trial under Rule 404(b) of the Federal Rules of Evidence.

The court will grant the government's motion requesting permission to pre-mark all of the exhibits that it intends to use at trial. However, the government is advised that, during trial, the exhibits will be formally marked by the courtroom deputy clerk in the order in which they are received for admission, and that the court shall make reference to exhibits and documents according to the clerk's discretion.

The court will deny the government's request to have both Special Agents sit at counsel table during trial. It is this court's customary practice to permit the government to designate only

one investigative agent to sit at the government's counsel table during trial, see, e.g., Fed. R.

Evid. 615, and the court finds no convincing reason to depart from that practice in this case.

Finally, the government's motion for admission of evidence under Rule 404(b) will be

taken under advisement. While the court is presently of the opinion that certain evidence

outlined in the government's motion will be admissible under Rule 404(b), the court will reserve

ruling on the admissibility of such evidence until the appropriate time at trial.

The Clerk is directed to send certified copies of this memorandum opinion and the

accompanying order to all counsel of record.

ENTER: This 25ᵗʰ day of August, 2009.

_____

United States District Judge